Argument is on receipt, 15 minutes to the side, Mr. Rennick and Mr. Johnson, you may be ready. Good morning, your honors, may it please the court. I'm Melissa Salinas and I'm the counsel of record for this case. And I'm here to introduce Colin Ray from the University of Michigan Federal Appellate Litigation Clinic. Thank you. Good morning, may it please the court. My name is Colin Ray and I am representing the appellate defendant, Mr. Damien Russ. Your honors, of the four issues presented in the briefs, during my brief time today I would like to discuss two issues that are separate but related in some important respects. The first issue is that the district court acted vindictively when it gave Mr. Russ a higher sentence following his successful appeal. The second issue is that the sentencing judge improperly applied a two-level enhancement for obstruction of justice. Now both of these issues involve the sentencing judge being improperly influenced by frustrations with the defendant stating conclusions without providing justifications or reasons for those. Was it ever asserted that this increased sentence was improper or questionable by virtue of its comparison to the previous sentence? During the sentencing hearing, your honor, that was not stated by... So it's really a claim that's never been raised then, right? It has been raised by Mr. Russ in a subsequent letter to the court. But, your honor, even if it wasn't raised... Raised by when the sentence was handed...you mean after the sentence was handed down and he's now thinking about it, he sent a letter to the court? Yes, your honor, and... I guess I'm ready. I don't know if we really want to get into forfeiture or waiver or anything, but wouldn't the fact that it wasn't raised mean that we could look in the record to see if there was a reason for the difference rather than criticizing the court for not having explained the difference? No, your honor, the presumption... We can't do that? No, your honor, the presumption would still apply here for two reasons. First is because... What's the presumption say? In North Carolina v. Pierce, the Supreme Court said that when a defendant is sentenced by the same district court judge and is given a higher sentence after a successful appeal, there is a presumption of indictiveness that applies. Why can't it be rebutted by looking at the difference in the situation before the court each time, even though the court doesn't explain that that's the reason for the difference? That's what I'm asking. Because, your honor, the Supreme Court and this circuit just in 2012 in U.S. v. McFalls said that to rebut the presumption, there must be affirmative information in the record. But we can look in the record to see if there's that affirmative information. We don't have to be pointed to it by the judge. Is that right? Yes, your honor. Listen, there's something very clear that's different, which is that he's found to have perjured himself on the stand. Well, that enhancement, while we don't believe that that should apply in the first place... Well, assume for the moment it should apply for the vindictiveness argument. Yes, your honor. Even if that did apply in this case, it wouldn't fully explain the increase in Mr. Russ's sentence. Specifically, it doesn't explain anything about the increase for his violation of supervised release, which increased from 18 months to 30 months after the second trial. The enhancement really only went to his felony possession of a handgun charge. But there was a guideline error calculation the first time around, wasn't there? No, your honor. I believe that there wasn't a guideline error calculation. The increase in sentence was something that the judge did after... I'm sorry, there was no error in that case. But they recalculated the one guideline, which he got the benefit of the first time, and they recalculated it correctly the second time, and that added some more time to it. I mean, this increase, the total increase, has more than one component to it. The one you were just discussing, the obstruction of justice charge, and this other one is the adjustment for the guideline, which was computed erroneously initially, right? Well, in the first case, when Mr. Russ was being sentenced, the judge actually stated that he was going below the guidelines, below the guideline level. And in the second case, after it had been computed correctly, he then went to the highest that he could possibly impose right there. So there was still a difference between what was being done in the first case and in the second case. Well, the difference was that the first time he picked the lowest point of the wrong guideline, and this time he picked the high point of the correct guideline. So that exacerbates the number of months, but it doesn't alter the fact that there is an underpinning that was different from the first trial. Yes, Your Honor, but even if in both situations he is sentencing within the guideline range, the very fact that he goes from the bottom of the guidelines to the top of the guidelines would implicate that the North Carolina v. Pierce presumption applies in this case. So, counsel, I know you have indicated that there was a presumption of vindictiveness because of the length of the sentence imposed at post remand. And I know that looking at the record, the judge didn't say, I'm imposing this sentence for, you know, one, two, three, four, five. But the judge in the transcript does discuss a variety of reasons as basis for the sentence imposed. And looking at those in the aggregate, isn't that sufficient to demonstrate on the record the reasons for the sentence? And if you look at those in the aggregate, isn't your position really just a disagreement with the reasons that the district court gave and not an absence of reasons given in the record? No, Your Honor. The reasons that were given by the district court judge were, and the government brings this up in the brief, they call it the new blame shifting tactics that Mr. Russ was using during the sentence. But these aren't a justification for an increase in Mr. Russ's sentence. These are actually the very reason we're bringing this vindictiveness claim. Because the reasons that are given, the reasons provided are that Mr. Russ brought collateral claims and effective assistance of counsel against his attorney in the first trial and in the second trial. And Mr. Russ was arguing about jury issues in the first case that came before this court and then again at his second sentencing. That Mr. Russ wasn't happy with his attorney and so decided to represent himself pro se during that hearing. And these are the very things that North Carolina v. Pierce is trying to protect against. But didn't the judge also, I mean didn't the judge go through and identify things like the fact that the defendant had served previous sentences of sufficient length and that had not deterred the criminal conduct? The fact that there had been other infractions, the need to protect the community, the need to remove the defendant from society for a longer period of time, those are not justifications for that sentence? They are justifications for the sentence that the judge originally imposed. And in that situation, after all of that was known during the first sentencing, the judge determined that 18 months was an adequate sentence. And the second case he determined that that wasn't the case. And it was because of these, what the government called blame shifting tactics. Can I ask, if that's finished your question, I want to go back to the perjury. You say it doesn't affect or justify an increased sentence for the violation of supervised release? Is that what you're saying? Yes, Your Honor. Why not? Because... I mean that lying also, if effective, would have meant that there was no violation of supervised release as well, right? Yes, but... So here is something concrete and different, which in one case causes a bump in the guideline to the extent that that guideline was bumped. The place within the guideline is about the same, and with respect to supervised release, although it may not change the guideline, the guideline, as you say, wasn't calculated correctly. All it did was cause a bump from the bottom of the guideline range to the top. Why couldn't you do that? Because he perjured himself trying not to get convicted for supervised release violation. I'm not following that. Your Honor, I have two responses to that. First, as I said before, and I'd like to get to soon, the enhancement shouldn't have applied in the first place, and even if... Okay, but I'm talking about vindictiveness. If you say the enhancement shouldn't have applied, well then, yeah, you don't even need to get to whether it was vindictive or not, right? Yes, Your Honor. Okay, so that sort of un-asks the question. I'm asking the question, assuming that the guideline applies. Yes, Your Honor. Why wouldn't it apply? If it applies, and if it justifies the increase in the sentence for the crime, why wouldn't it also increase the sentence for the supervised release violation? Well, it shouldn't be applied to Mr. Russ twice in this situation, especially because the things that the court identifies... That doesn't follow. I mean, that's like saying he shouldn't be convicted twice for the same crime, but it's not exactly the same crime. One is a supervised release crime, and one is the primary crime, right? Yes, Your Honor, but if you look at the things that the judge identifies that Mr. Russ is, what they say he's perjuring himself over, it's really only things that go to whether or not he had actual or constructive possession of the handgun. That possession is a violation of a crime, and it's also a violation of supervised release, right? Yes, Your Honor. And the first time around, he didn't lie on either one of them. And the second time around, the judge found that he did lie with respect to both of them. Is that correct? Yes, Your Honor. And if I may... Why is one different from the other, then? Well, if I may just discuss a little bit about the enhancement itself. Well, okay. That's a different argument. Please make it. Yeah, that's fine. I think the court will see that the fact that it was imposed in the first place was very tenuous, and so it especially shouldn't be applied twice to Mr. Russ here. So this court in U.S. v. Lawrence stated that for a court to uphold an enhancement for obstruction of justice due to perjury, there must be some reasoning in the record, some specific finding that shows why that was being applied, and that simply didn't happen in this case. Rather, what we have is the district court judge just recited the arguments made by the government and then made the conclusory statement that it was, and I quote, clear that Mr. Russ lied in those situations. Now, this is not enough to meet the Lawrence requirement that there be specific findings in the record. And moreover, if you look at... Is that a requirement so that we know exactly what the lying was? Yes, sir. I believe that it is partially a requirement so that this court can review de novo whether it's... It's pretty clear to me what the lying was. I'm sorry, Your Honor? It's pretty clear to me what the lying was as an appellate judge. I mean, he said he didn't think they were police people and that they were dressed in a certain way, and that was a way to say that he was running because he thought he was being accosted, not because police were coming after him. He did say all that, didn't he? Yes, Your Honor, but even if it is clear to you, the requirement that the Sixth Circuit has set before is that there must be reasoning in the record. There must be this specific finding. I see that my time is expiring. Mr. Rogers, would you indulge one more minute? Please, absolutely. I just wanted to reference the presumption vindicative of this. I can't talk this morning, which is sort of your opening line and the foundation of this case, but you have to apply that in context. For example, we have cases that we send back, for example, because there was a procedural irregularity in sentencing, and when the case comes back and the judge corrects the procedural error but increases the sentence, there's sort of some lights that go off. But when there's an intervening event, this was sent back because of a Batson violation. And so when you retry, there's all kinds of things that could happen. For example, a witness who was missing in the first trial might testify in the second trial, and that witness might testify that the assault that was involved was much more brutal than was able to be brought out in the first trial. So when you insert a completely different trial, I suggest to you that the presumption is considerably weakened. It's not the same burden as just today I said 10 months and tomorrow I say 12 months. Yes, Your Honor, I would agree with all of that. But the presumption still does reply, and it does have to be rebutted. And in the record here, the presumption was not rebutted by anything. If anything, the frustrations that was expressed by the district court judge towards Mr. Russ only strengthened that presumption. So accordingly, this court should remand this case for re-sentencing with a new judge and without the two-level enhancement. Further questions? No. Thank you, Counsel. Thank you. Appreciate your argument. Good morning, Your Honors. May it please the Court. My name is Laura Ford, and I'm here on behalf of the United States. Regardless of the standard review that applies in this case or whether Pierce or McCullough governs the vindictive sentencing claim, there was no vindictive sentencing in this case. I'd like to cover a couple points in the reply brief and then explain why under Pierce, even if that standard applies, that there's no vindictive sentencing. First, with respect to the concession in the reply brief on page 1, that only the government gave a clear and unambiguous response to the Bostick question. Bostick itself requires an objection that has a reasonable degree of specificity that would afford a district court an opportunity to correct an error at the hearing itself. That didn't happen, and our position is that this is reviewed under plain error. Second, with regard to the attempt to distinguish McCullough, that is unavailing. The fact that there was a different judge at re-sentencing was not determinative in that case because while Russ cites page 140 of the McCullough decision, he wholly ignores part 3 of the Supreme Court's decision at page 141 where the Supreme Court assumed for the sake of argument that the presumption of vindictiveness did apply and replaced the Pierce standard with whether post-sentencing conduct exists to impose a higher sentence with instead whether there is objective information in the record for the increase. It is the government's belief that McCullough governs this case, and the district court could base a repeat two-level variance based on Russ' criminal history and his poor performance on supervision. But even if Pierce applies and we're looking at whether there's an intervening cause, there is an intervening cause in this case, and that's perjury. Russ testified for the first time at retrial and perjured himself. And what's significant in this case is that essentially the court varied the same two levels that it had at the original sentencing hearing because Russ started out at original sentencing hearing at a level 24, and the court found that that was an adequate place in his criminal history and varied to a 26 and imposed a maximum within that range. At resentencing, Russ started at that variance level because you added two levels for the obstruction enhancement. When the court imposed 120 months, that corresponds directly to the maximum sentence that the court could impose at a level 28. So you essentially have the exact same extent of the variance at the resentencing. Does that apply to the supervised release sentence? The supervised release is a little different, and as Judge Guy pointed out, Russ benefited significantly from a calculation error at the original supervised release violation hearing at page ID 25. The court was under the impression that the guideline range was 18 to 24 months, and the court said, I'm going to impose the low-end guideline sentence. After the court had just said that, then he was corrected. The defense attorney said, Judge, I need to interrupt. I made a mistake. It is actually the higher 24 to 30 months, and the court was in a little bit of a precarious position because the court had already said, I'm going to impose the low-end. So the court ultimately decided, okay, I'm going to vary downward. I'm still sticking with the 18 months. So I resentenced. He varied downward. He varied downward, but the court was under. Now he's not varying downward. Pardon? He varied downward. He did. He gets appealed, and now he's not going to vary downward. Well, he was operating under the misconception when the court. The first two times he was operating under. The second time it was corrected at the, yes. And so the court confirmed that the correct guideline range at the. . . It's a little bit tougher argument than the other argument. Well, I would suggest that if this was a vindictive sentencing case, the court at the beginning of the hearing, at the resentencing, recognized that it had authority to impose the three-year statutory maximum at page ID 2576. If the court was acting vindictively, I think we would have seen a sentence that goes up to the three-year statutory maximum. And the court did not do that in this case. But I think that the perjury certainly is what sets this case in a different light. And it explains, at least for the conviction, how we got a guideline range that began at that original variance level. And I think essentially Russ's position is that he should get a free pass on the perjury. And certainly that's relevant with respect to the supervised release violation. And I think that the fact that he also was attempting to blame everyone else for his conduct somewhat ties into the perjury and sets this case apart and demonstrates that there was no vindictive sentencing in this case. With respect to the obstruction of justice enhancement, the court did make proper findings in this case and found that Russ's testimony was patently false. And the court did not simply adopt the examples that the government highlighted as false. Instead, the court provided two examples of how Russ's testimony was false, namely that the officers were dressed in attire that indicated that they were law enforcement and that Russ clearly possessed a firearm. And those findings were supported by the record. There was testimony that Bordenaro was wearing a vest carrier labeled police on the front and back, which is at page ID 2307-08. Bolden also was wearing a badge on a chain around his neck. And I would suggest that there's testimony in the record that would support that Bolden also was wearing attire that reflected that he was law enforcement. Specifically, I'd point to page ID 1270, which is actually the original trial, where he testified that he wore a vest with large lettering that said U.S. Marshals on the front and back. Unfortunately, at retrial, his testimony was not as clear on that point. And the way his sentence was structured, it appeared that the letters U.S. Marshals was over the shirt instead of the vest. But the court certainly had the benefit of hearing his testimony twice. But you do have a common thread in his testimony that he did have his badge on a chain around his neck. And at minimum, there was the testimony that Bordenaro had police on his external vest. And Russ himself admitted that he saw that second-person approach, which was Bordenaro. And contrary to Russ's argument, the court did make a finding that the testimony was willful with the intent to deceive by finding that it was not the product of mistake at page ID 2573. And for those reasons, the court did make proper findings. And the record does support the court's decision to impose. Can I ask you a question about another issue? Sure. On the sufficiency of the evidence scope of review issue, there's this question about whether it's manifest. What are the two standards, whether it's a sufficiency of the evidence or manifest injustice, based on whether it was properly raised at certain parts of the proceeding? And the argument is that it was properly raised by means of a motion afterwards, which is allowed under the rules. Could you address that? Absolutely. It is allowed under the rules. But the problem with Mr. Russ is that he didn't file a Rule 29C motion. He filed a motion for new trial, which is governed under Rule 33. That's a different standard. Pro se, though, right? He's pro se. And I would agree that necessarily the title is not necessarily determinative, but the content is. And the content of his motion for a new trial was that he had ineffective assistance of counsel and he complained about a perceived irregularity with the juror. It was nothing about sufficiency of the evidence? Nothing about sufficiency. Or about whether a jury could have believed it or anything like that? No, he complained about counsel not properly cross-examining, but he specifically did not put the government on notice that the evidence was insufficient. And I would say that that was the critical component of the cases that he cites on page 10 of his reply brief, that in those cases the government was put on notice by the motion for new trial that sufficiency was an issue. So even under the case law that he cites, his motion for new trial could not possibly preserve the unrenewed Rule 29 motion in this case. And we are under the standard of whether the record is devoid of evidence of his guilt, and that was not the case in this instance. Thank you. Thank you, Your Honors. If there's no further questions. Thank you, Counsel. Thank you very much. In your rebuttal, could you address this Rule 29 motion issue that she just responded to? Yes, Your Honor. As the counsel said, the title on the motion doesn't matter. What matters is the content. Right. And if I may. The content doesn't challenge the sufficiency of the evidence. Well, if I may read exactly what Mr. Russ said in that letter. It says, Since this motion to correct any and all defective verdict in which the judgment entered cannot be based because of irregularities and legal inadequacies based on jury's findings. And as a pro se defendant, when he's talking about the legal inadequacies for his verdict, I believe that's plenty to show that he is challenging the sufficiency of the evidence in that case. I guess I sort of missed that. It's like saying that the court was wrong. Is that enough? A pro se defendant goes in and says the court was wrong. That amounts to a Rule 29 motion. As a pro se defendant, when he calls into question the legal inadequacies for his verdict, he's saying that the It just means they made a mistake of law somewhere along the line is all I can. Is there anything else that sounds like there wasn't enough evidence? Your Honor, I read that to mean that Mr. Russ is saying that there were inadequacies with the evidence to suggest that he could be sentenced, that the court could sustain that conviction. In response to the government's argument about McCullough, we recognize that McCullough does limit the Pierce holding. This court in Goodell v. Williams has recognized that North Carolina v. Pierce has been limited in certain ways. For example, it doesn't apply when a jury decides that there should be a higher sentence. It doesn't apply when there are different judges. But here, if Pierce still has any meaning at all, which certainly it does because McCullough didn't overrule it, then Pierce stands for the fact that when there is the same judge who gives a higher sentence and there is some evidence in the record of vindictiveness, which there is here because of the repeated frustrations that he expressed with the plaintiff, this is the kind of case where Pierce definitely applies if it applies anywhere. You don't think the same frustrations could have arisen if this hadn't been a resentencing but was an original sentencing? Those frustrations could have arisen, but they weren't in the record. Well, what's the expressed frustration about? The expressed frustrations are the very reason we're bringing this vindictiveness claim. It's frustrations about the facts. He says you shouldn't have appealed, you shouldn't have made a Brady claim, like my Batson claim. Yes, Your Honor. He repeatedly refers to the fact that Mr. Ross brought ineffective assistance of counsel claims, the fact that he was making jury arguments, which the Batson challenge would fall under, and he was making further jury arguments at his sentencing. And these are the very things that... At the second sentencing. At the second sentencing. These are the very things that North Carolina v. Pierce was trying to protect against. The Supreme Court wanted to ensure... I thought North Carolina, with respect, I thought North Carolina was trying to protect against vindictiveness for having appealed a previous judgment. Yes, Your Honor. Is there anything in there? That's not any irritation against the defendant. That's irritation against the defendant for having brought a previous appeal. If the defendant continues to be irritating, the judge can be irritated. It just can't be irritated by having previously brought an appeal. Isn't that right or wrong? Well, Your Honor, in Pierce's... Is that right or wrong? You can say if he's irritated at something else, that counts as being irritated for the previous appeal? Your Honor, the court can say that he is irritated with the defendant, and still give a higher sentence, as long as there is something that rebutts that presumption of vindictiveness. But that's the other issue. You're saying there is sort of something, but in determining whether there's something or not, we have to look at the fact that he's irritated. But I'm not seeing how the fact that he's irritated adds anything, unless it's irritation at the previous appeal. Sorry, Your Honor. I think that even if the frustrations that the judge expressed were not in the record, we would still win this case because vindictiveness... I was trying to ask you questions about your argument about irritation. Now you're moving off of that. I was just saying that the irritation is not necessary for the vindictiveness claim. All right. I see my time is up, so if I may briefly conclude. The presumption of vindictiveness, as stated in North Carolina v. Pierce, does apply in this case. And there isn't anything in the record that completely explains the increase from the first trial to the second trial. Accordingly, this court should remand the case back to the district court for resentencing without the different judge and without the two-level enhancement. Thank you. Thank you, counsel. We appreciate your argument. Thank you. The case will be submitted. Please call the next case.